**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 3:16-CV-00679-MR**

| | | |
|---|---|---|
| **SANTO F. GRASSO,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 12].

**I.    PROCEDURAL BACKGROUND**

The Plaintiff, Santo F. Grasso ("Plaintiff"), asserts that his lumbar degenerative disc disease with nerve root irritation and sacroiliac inflammation, bipolar disorder, and intermittent explosive disorder constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled.  On May 25, 2010, the Plaintiff filed applications for a period of disability and disability insurance benefits under

Title II of the Act and supplemental security benefits under Title XVI of the Act, alleging an onset date of August 25, 2009. [Transcript ("T.") at 317, 321]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 189, 203, 207]. Upon Plaintiff's request, a hearing was held on December 7, 2012, before an Administrative Law Judge ("ALJ"). [T. at 71]. Present at the hearing were the Plaintiff and Jill Calvert, Plaintiff's attorney. [Id.]. On June February 27, 2013, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 169-78]. On April 21, 2015, the Plaintiff requested that the Appeals Council review the ALJ's decision. [Id. at 13]. The Appeals Council granted this request. [Id. at 8]. On June 9, 2014, the Appeals Council vacated the decision of the ALJ and remanded the case and directed the ALJ to remedy three elucidated deficits in his decision under the substantial evidence standard. [Id. at 186-7]. On remand, the ALJ conducted another hearing, which occurred on September 30, 2015. [T. at 39]. Present at the hearing were the Plaintiff; P. Barrett Morris, the Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On February 23, 2015, the ALJ issued a second decision denying Plaintiff benefits. [T. at 17-31]. On July 22, 2016, the Appeals Council denied Plaintiff's request for review of this decision. [T. at 1-5]. The

Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted).  "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal

quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, on remand, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged date of onset, August 25, 2009. [T. at 19]. At step two, the ALJ found that the Plaintiff has severe impairments including

lumbar degenerative disc disease with nerve root irritation and sacroiliac inflammation, bipolar disorder, and intermittent explosive disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 20]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing, bending, squatting and concentrated exposure to extreme temperatures, respiratory irritants, noise and heights. In addition, the claimant is limited to performing simple, routine and repetitive tasks with only occasional contact with supervisors, co-workers and the public.

[Id. at 21].

At step four, the ALJ held that the demands of Plaintiff's past relevant work exceed his RFC and Plaintiff is, therefore, unable to perform any past relevant work. [Id. at 30]. At step 5, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that he was able to perform, including light and unskilled assembler and bench hand/hand packer. [Id. at 30-31]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social

7

Security Act from August 25, 2009, his alleged date of onset, through February 23, 2015, the date of the ALJ's second decision. [Id. at 31].

## V. DISCUSSION[1]

In this appeal, the Plaintiff asserts that the ALJ erred in failing to provide a function-by-function analysis of Plaintiff's mental limitations in the RFC assessment as required by SSR 96-8p. [Doc. 11 at 5]. Plaintiff also argues the ALJ erred in failing to give "good reasons" for rejecting the opinion of one of Plaintiff's treating physicians. [Id. at 6]. The Plaintiff argues that these errors require remand. The Defendant, on the other hand, asserts that the ALJ's determinations on these issues were supported by substantial evidence and in accordance with the Commissioner's regulations. [Doc. 13 at 10, 13, 16, 19-20, 23-6].

### A. The Mental RFC Determination.

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

including the functions" listed in the regulations.[2] SSR 96-8p; see also, Mascio, 780 F.3d at 636 (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a claimant's claim is based on severe mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the claimant's past mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(E). The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8P; 20 C.F.R. §§ 404.1520a, 416.920a.

---

[2] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A). Therefore, the determination of mental RFC, as noted above, is accomplished through the use of the aforementioned "special technique."

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).… If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b). For this reason, Rule 96-8p requires as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 20-1]. At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria[3] in listing 12.04 (depressive, bipolar and related disorders), the ALJ made findings on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. [Id. at 15-16]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)</u>. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[T. at 16 (emphasis added)].

---

[3] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

By finding in step three that Plaintiff suffers from moderate restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence or pace, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B. In formulating Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated into any actual functional limitations. It appears that the ALJ sought to account for Plaintiff's "moderate difficulties" in "concentration, persistence or pace" by limiting Plaintiff to "simple, routine and repetitive tasks." [T. at 21]. A restriction to simple, repetitive tasks, however, does not "account for a limitation in concentration, persistence or pace." Mascio, 780 F.3d at 638; see also Kitrell v. Colvin, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); Scruggs v. Colvin, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.). Furthermore, with respect to the provision in the RFC limiting the Plaintiff to "only occasional contact with supervisors, co-workers and the public," the ALJ fails to explain the basis for this restriction or how it accounts for his moderate limitations in social functioning. The ALJ similarly failed to explain the basis for Plaintiff's restriction from "concentrated exposure to extreme temperatures, respiratory irritants, noise and heights" or how it

accounts for any of his mental, or perhaps physical, limitations. A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). See Patterson, 846 F.3d at 662 ("Without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence.").

For these reasons, this matter will be remanded to the ALJ so that he may comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson, 846 F.3d at 659, 662. Upon remand, it will be crucial that the ALJ carefully perform a function-by-function analysis of Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and

logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence supports each conclusion, as required by Rule 96-8p, is essential and should account for Plaintiff's limitations in social functioning; activities of daily living; and concentration, persistence or pace and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).[4]

## B. The Evaluation of Opinion Evidence.

Plaintiff also assigns error to the ALJ's asserted failure to provide "good reasons" for assigning "less weight" to a portion of the medical opinion of one of Plaintiff's treating physicians. [Doc. 11 at 6; see T. at 29].

---

[4] On appeal, Plaintiff also assigns error to the ALJ's failure "to explain why limitations contained in medical opinions he gives great weight are not included in the RFC finding." [Doc. 11 at 5]. The Court cannot consider the merits of these claims, or reach an independent conclusion on whether Plaintiff is entitled to benefits, because the ALJ failed to follow the special technique in documenting his conclusions regarding Plaintiff's mental RFC. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 662 & n. 1 (4th Cir. 2017) ("[B]ecause we cannot review the ALJ's mental-impairment evaluation, we cannot say that he properly assessed [plaintiff's] RFC. And because we cannot gauge the propriety of the ALJ's RFC assessment, we cannot say that substantial evidence supports the ALJ's denial of benefits."). In short, the ALJ's findings lack the "necessary predicate" for the Court to engage in meaningful review. Fox v. Colvin, 632 Fed.Appx. 750, 755 (4th Cir. 2015) (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)).

In this case, the ALJ gave controlling weight to the medical opinions of Anthony Joseph, M.D., one of the Plaintiff's treating physicians. The ALJ, however, rejected Dr. Joseph's opinion regarding the Plaintiff's ability to work, finding that "Dr. Joseph's treatment records simply do not contain objective findings or clinical signs that would support a finding" of disability. [T. 29]. Since the ultimate question of disability is an issue reserved to the Commissioner, the ALJ is not required to give controlling weight to a treating source's opinion on that issue. SSR 96-5P. However, "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator *must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion*." Id. (emphasis added). The ALJ failed to make such effort or to otherwise document such effort in his decision. On remand, the ALJ must undertake to conform to this requirement.

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's mental residual functional capacity in accordance with and evidencing use of the "special technique" set forth in 20 C.F.R. § 404.1520a and Rule 96-8p. A

15

proper function-by-function analysis in accordance with Rule 96-8p would allow the Court to readily determine the merits of Plaintiff's other arguments related to whether the ALJ's RFC assessment properly accounted for certain limitations found in various medical opinions. The ALJ should also make every reasonable effort to recontact Dr. Joseph for clarification of the reasons for his opinion on the Plaintiff's ability to work, in accordance with 96-5P, if necessary.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 12] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 27, 2018

Martin Reidinger
United States District Judge